UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| PAULA LAZO, et al., | No. C 12-00762 LB |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| BANK OF AMERICA, N.A., | [Re: ECF No. 9] |
| Defendant. | |

## I. INTRODUCTION

Paula Lazo, Nubia Dolores, and Alexander Molina Chavez (collectively, "Plaintiffs") bring several California state law claims against Bank of America, N.A. ("BANA") that arise out of a temporary modification of Plaintiffs' mortgage loan. BANA moved to dismiss all of Plaintiffs' claims. Upon consideration of the record and the papers submitted, the court GRANTS BANA's motion and DISMISSES WITHOUT PREJUDICE Plaintiffs' complaint.[1]

## II. BACKGROUND

In September 2006, Plaintiffs obtained a $470,000 mortgage loan from BANA to refinance their real property in Hayward, California. Notice of Removal, Ex. 1 ("Complaint"), ECF No. 1 at 17, ¶

---

[1] Pursuant to this District's Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the May 24, 2012 hearing.

16[2]; Request for Judicial Notice ("RJN"), Deed of Trust, ECF No. 10-1.[3] Plaintiffs allege that they subsequently entered into a temporary Loan Modification Trial Period Plan ("TPP") on June 17, 2011. Complaint, ECF No. 1 at 17, ¶ 17. "Plaintiffs believed, as promised by BANA, [that the TPP] would lead to a permanent modification on their loan." *Id.*

The cover letter that BANA employee Pervaiz Ali sent to Ms. Lazo about the TPP summarizes the situation and states in relevant part:

> Congratulations. We have determined that you are eligible for a trial modification. Enclosed is your Trial Period Plan. If you successfully complete the trial modification, your permanent modification may be similar in terms/payments, pending final review at the time of the permanent modification. . . .
>
> After you successfully complete your Trial Period Plan by making three trial payments, we will contact you to discuss the terms of your permanent modification. A Permanent Loan Modification Agreement will be sent to you that you will need to sign and return before you loan will be permanently modified.

RJN, TPP, ECF No. 10-2 at 2 (emphasis in original).

The two-page TPP enclosed with Mr. Ali's cover letter sets forth the terms and conditions of the deal and provides in relevant part:

> **To qualify for a modification of your account referenced above (your "Loan")**

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[3] BANA requests that the court take judicial notice of the following documents: (1) the Deed of Trust, recorded in the Official Records of Alameda County on September 11, 2006 as Document Number 2006343287; and (2) the Loan Modification Trial Period Plan and BANA's June 17, 2011 letter to Paula Lazo that accompanied it. Plaintiffs did not oppose BANA's request or file any objections challenging the authenticity of either of these documents.

The court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the Deed of Trust is a public record, the court may properly take judicial notice of the undisputable facts contained in it. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b). The court may also consider documents whose authenticity is not challenged and upon which a plaintiff's complaint depends, without converting a motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Plaintiffs' complaint depends upon the Loan Modification Trial Period Plan, so the court may properly take judicial notice of the facts contained in it, too.

C 12-00762
ORDER
2

**with Bank of America (the "Bank"), you are Requested to complete a three month trial period.** If you complete the trial period successfully, we will offer you a modification of your Loan. Here's how the process works:

- We have set your trial period payment at $2,087.29 (the "Trial Payment Amount"). This is an estimate of what your initial monthly payment amount will be if you complete your trial period and enter into a permanent modification agreement (your "Modification Agreement"). Depending on the specific terms of your Modification Agreement . . . .

. . .

- You will receive a permanent modification of your account if you have a) paid each of the monthly trial period payments (the "Trial Payments") on time, and b) signed and returned the final Modification Agreement, which will be sent once you have completed your Trial Payments.

. . .

After your third consecutive on-time Trial Payment, the Bank will contact you and will forward your Modification Agreement to you. **Please continue making your monthly trial payment until you receive your <u>Modification Agreement</u>.** Once you receive your Modification Agreement, you must sign and return it within 30 days or the modification offer will terminate. . . .

. . .

**Additional Terms and Conditions:**

You and we agree that:

- We will suspend any scheduled foreclosure sale or pending foreclosure proceedings on your Mortgage during the Trial Period, provided you continue to meet the obligations under this Trial Period . . . .

. . .

- Your current loan documents (your "Original Loan Documents") remain in effect, however, you may make the Trial Payment instead of the payment required under your Original Loan Documents.

    - You agree that all terms and provisions of your current Mortgage note and Mortgage security instrument, except to the extent modified by this Trial Period Plan, remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Original Loan Documents.

. . .

- Final terms of your Modification Agreement:

    - Once you have completed your Trial Payments, and after applying any remaining money held at the end of the Trial Period, we will determine the new payment amount and the remaining final terms of your Modification

C 12-00762
ORDER

3

Agreement. This Modification Agreement will modify your Original Loan Documents to reflect your new payment amount and other terms.

. . . .

*Id*. at 3-4 (emphasis in original).

Plaintiffs allege that they "fulfilled the requirements of the offer extended by BANA by paying the requested Three (3) Trial Period payments of $2,087.29 each month." Complaint, ECF No. 1 at 17, ¶ 19. Plaintiffs allege that they also "paid an additional Two (2) months of Trial Period [payments, for] a total of Five (5) months." *Id*.

Despite these making these payments, "BANA did not offer the Permanent Modification as promised, that after the completed Trial Period payments were made on time, a permanent modification would be offered." *Id*. at 17, ¶ 20. Instead, "Lori Francis, a BANA Negotiator for the loan in question[,] stated via email that a permanent modification would NOT be done unless the homeowner paid $34,683.16." *Id*. at 17, ¶ 21. This requirement, Plaintiffs allege, "was not previously discussed as part of the promise BANA made to [them]." *Id*. at 18, ¶ 29. "After Plaintiffs made payments in good faith[,] believing they would save their home by way of the permanent modification, BANA reneged on their promise to save Plaintiffs." *Id*. at 18, ¶ 22. Finally, on December 15, 2011, "BANA sent Plaintiffs a Notice to Accelerate indicating that Plaintiffs now face possible foreclosure because they could not pay $34,683.16. *Id*. at 19, ¶ 31.[4]

Plaintiffs therefore claim that "BANA intentionally and willfully deceived Plaintiffs[,] leading them to believe that they would obtain a permanent modification on their loan." *Id*. at 18, ¶ 22.

---

[4] Plaintiffs also allege that "BANA further breached their promise by initiating foreclosure proceedings," Complaint, ECF No. 1 at 19, ¶ 30, but they do not allege that BANA or anyone else has recorded a notice of default or notice of trustee's sale, or similar document indicating that foreclosure proceedings have been initiated, *see generally id*. In fact, BANA states in its motion to dismiss that it has not recorded a notice of default and that no foreclosure sale is pending. Motion, ECF No.9 at 11 n.1. Because Plaintiffs do not allege a claim for wrongful foreclosure or seek redress from foreclosure, *see generally* Complaint, ECF No. 1 at 14-31, the court finds inapposite BANA's argument that Plaintiffs failed to allege a valid and viable tender of the amount due under their loan, *see* Motion, ECF No. 9 at 13.

Plaintiffs say they were harmed by BANA's actions because, based on their anticipation of receiving a permanent loan modification, they "elected not to pursue other avenues of relief from the unjust and fraudulent terms of the original loan and Deeds of Trust, as [they] believed [BANA's] representations that acceptance of the [TPP] agreement would prevent foreclosure and eliminate the need for further remedies." *Id*. at 19, ¶ 32.

On January 18, 2012, Plaintiffs filed the instant action in Alameda County Superior Court. Complaint, ECF No. 1 at 9. After being served with the complaint, BANA removed it to this court on the basis of diversity jurisdiction. Notice of Removal, ECF No. 1 at 1-4. BANA has now moved to dismiss Plaintiffs' complaint. Motion, ECF No. 9. Plaintiffs' timely opposed BANA's motion, and BANA filed a reply. Opposition, ECF No. 13; Reply, ECF No. 14.

### III. LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## IV. DISCUSSION

A.  Breach of Contract

In their first cause of action, it appears that Plaintiffs allege that BANA breached the TPP either by (1) not permanently modifying their loan after receiving Plaintiffs' three payments during the trial modification period, *see* Complaint, ECF No. 1 at 17-18, ¶¶ 17, 18, 21, 22, 26, 27, 29, or (2) not even providing them with an offer to permanently modify their loan upon receiving those same payments, *see id*. at 17-18, ¶¶ 18, 20, 27.

To state a claim for breach of contract, a plaintiff must show the following: (1) that a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Monaco v. Bear Sterns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000); *Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994)). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Id*. (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)). "An ambiguity may appear on the face of an agreement or extrinsic evidence may

reveal a latent ambiguity." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114 (2007) (citation omitted).

### 1.  Whether the TPP Was Supported by Consideration

BANA challenges the existence of a contract by arguing that the TPP was not supported by consideration because Plaintiffs were already legally obligated to make payments on their existing loan.  Motion, ECF No. 9 at 20-21.

For Plaintiffs to have a viable breach of contract claim at all under the TPP, the TPP must have been supported by consideration.  Under California law, "good consideration" to support a contract is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605.  "Generally speaking, a commitment to perform a preexisting contractual obligation has no value.  In contractual parlance, for example, doing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract."  *Auerbach v. Great W. Bank*, 74 Cal. App. 4th, 1172, 1185 (1999) (citations omitted).  On the other hand, "[u]nder California law, consideration exists even if the performance due 'consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire.  It is enough that some small additional performance is bargained for and given. . . . [It is sufficient] if the act or forebearance given or promised as consideration differs in any way from what was previously due.'" *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10–03892 WHA, 2011 WL 1134451, at *4 (quoting *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963)) (finding that consideration existed where plaintiffs expended time and energy and made financial disclosures in furtherance of the TPP agreement, which they would not have been required to do under the original contract). *See Wigod v. Wells Fargo Bank*, 637 F.3d 547, 564 (7th Cir. 2012) (TPP at issue in that case was supported by consideration because the borrower agreed to "open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information"); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059,

1067 (N.D. Cal. 2011) ("additional consideration suffered was the credit consequences of [plaintiffs'] partial mortgage payments and fulfilling the burdensome documentation requirements of the loan modification approval process").

The court finds that the TPP is supported by consideration. For example, the TPP required Plaintiffs to make three payments by June 17, 2011, July 17, 2011, and August 17, 2011. TPP, ECF No. 10-2 at 3. These dates, the TPP notes, may have been different than the dates on which Plaintiffs normally would have had to make their mortgage payments. *Id*. The TPP also notes that Plaintiffs' credit score might be affected by accepting the TPP. *Id*. at 4. Under the authorities above, this is sufficient consideration.

2. Whether the TPP Obligates BANA to Permanently Modify Plaintiffs' Loan

The court first addresses Plaintiffs' claim that BANA breached the TPP by not permanently modifying their loan. They allege that the TPP required BANA to permanently modify their loan once they made the three payments during the three-month trial period. *See* Complaint, ECF No. 1 at 17-18, ¶¶ 17, 18, 21, 22, 26, 27, 29. BANA argues that the TPP lacks essential terms to constitute an agreement to permanently modify Plaintiffs' loan. Motion, ECF No. 9 at 19-20.

The court agrees with BANA. "Under California law, a contract will be enforced if it is sufficiently definite . . . for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991). "Conversely, a contract is void and unenforceable where a contract is so uncertain and indefinite that the intention of the parties on material questions cannot be ascertained." *Sutcliffe v. Wells Fargo Bank, N.A.*, No. C–11–06595 JCS, 2012 WL 1622665, at *20 (N.D. Cal. May 9, 2012) (citing *Ladas v. California State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993). "Typically, where a contract involves a loan it should include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite." *Id.* (citing *Peterson Development Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991). "The California Supreme Court has cautioned, however, that the destruction of contracts on the basis of indefiniteness is disfavored and therefore, courts should, if feasible, 'construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained.'" *Id.* (citing *Patel v.

*Liebermensch*, 45 Cal. 4th 344, 369 (2008)).

In some instances, courts have denied motions to dismiss where plaintiffs claimed that a TPP required a defendant to permanently modify their loan, even when the TPP did not set forth the essential terms for the permanent modification. *See Wigod*, 673 F.3d at 564-66; *Sutcliffe*, 2012 WL 1622665, at *20; *In re Ossman*, Bankruptcy No. 1:11–bk–16788–MT, 2012 WL 315485, at *3 (C.D. Cal. Jan. 31, 2012); *Turbeville v. JPMorgan Chase Bank*, No. SA CV 10–01464 DOC (JCGx), 2011 WL 7163111, at *4 (C.D. Cal. Apr. 4, 2011). These decisions are distinguishable because they all involved TPP's under the Home Affordable Modification Program ("HAMP"), and the applicable HAMP guidelines were critical to the courts' reasoning. For instance, in an order denying a bank defendant's motion to dismiss, Judge Spero explained why the HAMP TPP's lack of essential terms did not render it unenforceable:

> Wells Fargo contends that the TPP cannot give rise to an enforceable contract because it does not set forth the repayment terms that would apply to the modified loan and therefore it is indefinite. The Court disagrees. As the court explained in *Wigod*, while the TPP did not set forth the specific terms of repayment, Wells Fargo was required to offer a modification that was consistent with HAMP guidelines and therefore, the agreement did not give Wells Fargo unlimited discretion as to the repayment terms. *Wigod*, 673 F.3d at 565. Therefore, the *Wigod* court concluded that the TPP was sufficiently definite for a contract to exist. *Id*. Similarly, the courts in *In re Ossman*, 2012 WL 315485, at *3, and *Turbeville*, 2011 WL 7163111, at *4, found that the TPP was not indefinite to the extent that the terms of the modification had to be calculated consistent with HAMP guidelines. Because Wells Fargo was required to comply with HAMP guidelines in determining the terms of repayment under a modification agreement, the Court concludes, at least at the pleading stage, that the terms of the TPP are sufficiently definite to support the existence of a contract.

*Sutcliffe*, 2012 WL 1622665, at *20.

The court finds this reasoning persuasive in the HAMP context, but, at least on the record before it, it does not appear to apply to the context here. The TPP makes no reference to HAMP, and both Plaintiffs and BANA suggest that the TPP does not involve HAMP or its guidelines. Opposition, ECF No. 13 at 3; Reply, ECF No. 14 at 5 n.2. *But see* Complaint, ECF No. 1 at 17, ¶ 14 (allegation that BANA had "a duty to comply with [HAMP]"). Thus, there are no guidelines for the parties to use to determine the essential terms of a permanent loan modification. And without these essential terms or a way to derive them, Plaintiffs have not alleged the existence of a sufficiently definite, and

C 12-00762
ORDER
9

1  thus enforceable, contract that requires BANA to permanently modify their loan.

2  Accordingly, Plaintiffs' claim that BANA breached the TPP by failing to permanently modify
3  their loan is dismissed without prejudice.[5]

4  3.  Whether the TPP Obligates BANA to Offer to Permanently Modify Plaintiffs' Loan

5  The court next addresses Plaintiffs' claim that BANA breached the TPP by not even offering to
6  permanently modify their loan as the TPP requires. *See* Complaint, ECF No. 1 at 17-18, ¶¶ 18, 20,
7  27.  BANA argues that the TPP does not restrict it from "conditioning a permanent modification on
8  the Plaintiffs' payment of $34,683.16 [], which was the arrearage under the loan at the time."
9  Motion, ECF No. 9 at 17.

10  BANA is incorrect.  Under the terms of the TPP, once Plaintiffs successfully made the three
11  payments during the trial period, BANA was required to offer Plaintiffs' a permanent loan
12  modification.  *See* TPP, ECF No. 10-2 at 3 ("If you complete the trial period successfully, *we will*
13  *offer you a modification of your Loan*") (emphasis added).  BANA was required to make this offer
14  by sending Plaintiffs a Modification Agreement.  *Id*. ("You will receive a permanent modification of

---

[5] BANA also cites numerous opinions in which courts granted defendants' motions to dismiss where plaintiffs claimed that TPPs required the defendants to permanently modify their loans. *See* Motion, ECF No. 9 at 18 (citing *Morales v. Chase Home Finance, LLC*, No. C 10-02068 JSW, 2011 WL 1670045, at *5 (N.D. Cal. Apr. 11, 2011); *Torres v. Litton Loan Servicing, L.P.*, 2011 WL 149833, at *3 (E.D. Cal. Jan. 18, 2011); *Grill v. BAC Home Loans Servicing LP*, No. 10-CV-03057-FCD/GGH, 2011 WL 127891, at *4 (E.D. Cal. Jan. 14, 2011); *Prasad v. BAC Home Loans Servicing LP*, No. 2:10–CV–2343–FCD/KJN, 2010 WL 5090331, at *4 (E.D. Cal. Dec. 7, 2010); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1067-68 (N.D. Cal. 2011) (White, J.); *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10CV670–HEH, 2011 WL 1306311, at *3-6 (E.D. Va. Apr. 1, 2011); *In re Salvador*, 456 B.R. 610, 619-620 (Bankr. M.D. Ga. 2011); *Sherman v. Litton Loan Serv.*, L.P., 796 F. Supp. 2d 753, 762-763 (E.D. Va. 2011); *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1208-09 (D. Or. 2011)).  These opinions are distinguishable from this case because they all involved the TPP used under HAMP.  In all of these opinions, the courts looked to the terms of the HAMP TPP and found that the plaintiffs had not sufficiently alleged compliance with all of those terms.  *See*, *e.g.*, *Morales*, 2011 WL 1670045, at *6 ("Plaintiffs failed to allege, however, that they have met all the conditions set forth in the TPP Contract, including receipt of a 'fully executed copy of a Modification Agreement,' and therefore fail to allege the existence of a binding contract regarding a permanent loan modification.").  These opinions did not, as BANA contends, set forth a general rule that "where a TPP indicates that the terms of a permanent modification are still to be determined, the TPP does not create an enforceable right to receive a permanent modification."  *See* Motion, ECF No. 9 at 18.

C 12-00762
ORDER
10

1 your account if you have a) paid each of the monthly trial period payments (the 'Trial Payments') on
2 time, and b) signed and returned *the final Modification Agreement, which will be sent once you have*
3 *completed your Trial Payments*.") (emphasis added); *id.* ("After your third consecutive on-time Trial
4 Payment, the Bank will contact you and will forward your Modification Agreement to you. **Please**
5 **continue making your monthly trial payment until you receive your <u>Modification Agreement</u>.**
6 Once you receive your Modification Agreement, you must sign and return it within 30 days or the
7 modification offer will terminate. . . .) (emphasis in original). Although the terms of the
8 Modification Agreement were not settled at the time the BANA sent the TPP to Plaintiffs, *see id.*
9 ("Depending on the specific terms of your Modification Agreement . . . ."), under the clear terms of
10 the TPP, BANA still was obligated to send the Modification Agreement to Plaintiffs after Plaintiffs
11 successfully made the three payments during the trial period.

12     Plaintiffs' factual allegations with respect to this claim, however, are unclear. They do not allege
13 that BANA never sent them a Modification Agreement. *See generally* Complaint, ECF No. 14-31.
14 Instead, what Plaintiffs allege is that BANA conditioned its making of the offer on Plaintiffs'
15 payment of $34,683.13. Complaint, ECF No. 1 at 17, ¶¶ 20, 21, 29. But it is unclear from
16 Plaintiffs' allegation whether Plaintiffs' payment of the $34,683.13 was a term of the Modification
17 Agreement or a condition that Plaintiffs had to meet before being provided with a Modification
18 Agreement.

19     If BANA never sent Plaintiffs a Modification Agreement or conditioned its sending of a
20 Modification Agreement on Plaintiffs' payment of $34,683.13 (i.e., this payment was not simply a
21 term of the Modification Agreement), Plaintiffs' breach of contract claim would survive a motion to
22 dismiss. *See Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 340-52 (D. Mass. 2011)
23 (denying defendant's motion to dismiss where plaintiff's claim was that an oral agreement required
24 defendant to consider permanently modifying plaintiffs' loan; distinguishing this claim from those
25 dismissed by other courts where plaintiffs' alleged that temporary loan modification agreements
26 required defendants to actually give them permanent loan modifications); *Bosque v. Wells Fargo*
27 *Bank, N.A.*, 762 F. Supp. 2d 342. 352 (D. Mass. 2011) (denying defendant's motion to dismiss
28 where plaintiffs' claim in part was that compliance with the terms of the TPP entitled them to a

decision on whether they are entitled to a permanent modification); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-CV-10380-RGS, 2010 WL 482 5632, at * 4 (D. Mass. Nov. 24, 2010) (denying defendant's motion to dismiss where plaintiffs' claim was not that the TPP was a loan agreement, but that the TPP was "a promise to provide [p]laintiffs with a [loan agreement] at a specified date if [p]laintiffs compl[ied] with the necessary conditions"). But because Plaintiffs allegations in support of this claim are unclear – and thus do not provide BANA with the level of notice contemplated by Rule 8 – the court dismisses without prejudice Plaintiffs's claim.

B.  Promissory Estoppel

In their second cause of action, Plaintiffs' claim that BANA should have to permanently modify their loan under the doctrine of promissory estoppel. Complaint, ECF No. 1 at 19-20, ¶¶ 37-45. Plaintiffs allege that BANA "made a promise that Plaintiffs would be approved for a loan modification as of September 17, 2011"; "promised Plaintiffs [that they] would receive a permanent modification of their account after the third Trial Period payment was made"; and "breached [its] duty under the promise made when [it] refused to permanently modify their account." *Id*. at 20, ¶¶ 38-40.[6] BANA argues that Plaintiffs fail to allege that BANA made a "clear and unambiguous" promise to permanently modify their loan or, if it did, breached it. Motion, ECF No. 9 at 22-23. BANA also argues that Plaintiffs fail to allege detrimental and reasonable reliance on the promise. *Id*. at 23-24.

Under California law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).

---

[6] Plaintiffs do not specify it, but the court assumes that the BANA's alleged "promise" is based on the TPP. To the extent that Plaintiffs might be trying to allege an additional oral promise, the attempt would fail because such a promise would be subject to the statute of frauds. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *See Secrests v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Id.* at 547. Thus, any oral promise to modify Plaintiffs' loan is subject to the statute of frauds. *Id.*

Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires." *See id.* The elements of promissory estoppel are: "(1) a clear promise; (2) reasonable reliance; (3) substantial detriment; and (4) damages 'measured by the extent of the obligation assumed and not performed.'" *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (citing and quoting *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

As explained above with respect to Plaintiffs' breach of contract claim, the TPP does not provide the essential terms of any promise by BANA to permanently modify Plaintiffs' loan. Without such terms, BANA is correct that Plaintiffs fail to allege a "clear and unambiguous" promise to do so. *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890-91 (1976) (affirming dismissal of promissory estoppel claim where the alleged "promise" was not "clear and unambiguous"). *See Dooms v. Federal Home Loan Mortg. Corp.*, No. CV F 11–0352 LJO DLB, 2011 WL 1232989, at *10 (E.D. Cal. Mar. 31, 2011) (dismissing a promissory estoppel claim where the plaintiff failed to specify (1) a particular representative who made the promise, (2) the terms of the loan modification, and (3) consideration offered in return for the promise).[7]

And even if BANA had made a clear promise, the court finds that Plaintiffs fail to sufficiently allege that they suffered substantial detriment. Plaintiffs allege that, in light of BANA's alleged promise to permanently modify their loan, they "did not pursue alternate measures to avoid the foreclosure," such as refinancing or marketing or selling the property at issue. Complaint, ECF No. 1 at 20, ¶ 43. Plaintiffs, however, make no effort to allege why they could not have pursued these alternative measures during the trial period. *See U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 904 (2005) ("Because promissory estoppel is viewed as an "informal contract," causation must be required as an element that a plaintiff must prove, just as in ordinary contract actions.").

Accordingly, Plaintiffs' promissory estoppel claim is dismissed without prejudice.

C.  Breach of Good Faith and Fair Dealing

---

[7] Plaintiffs do not appear to base their promissory estoppel claim on BANA's promise to offer them a permanent loan modification. *See* Complaint, ECF No. 1 at 19-20, ¶¶ 36-45.

C 12-00762
ORDER
13

In their third cause of action, Plaintiffs allege that BANA breached the implied covenant of good faith and fair dealing when it "failed to perform their obligations in accordance with the promise [it] made to Plaintiffs" in the TPP. Complaint, ECF No. 1 at 21, ¶ 48.[8]

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See, e.g., Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).[9]

---

[8] Plaintiffs also allege, for the first time and without any detail, that BANA breached the implied covenant of good faith and fair dealing when it "[a]ssessed improper or excessive late fees"; "[i]mproperly characterized Plaintiffs' account as being in default or delinquent status to generate unwarranted fees"; "[i]nstituted improper or premature foreclosing proceedings to generate unwarranted fees"; "[m]isapplied or failed to apply Plaintiffs' payments"; "[sought] to collect, and attempt[ed] to collect, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due"; "[m]ishandled Plaintiffs' mortgage payments and fail[ed] to timely or properly credit payments received, resulting in late charges, delinquencies or default"; and "[t]reat[ed] Plaintiffs[] as in default on their loan even though [they] have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law." Complaint, ECF No. 1 at 21-22, ¶ 51. These allegations are not supported by any of Plaintiffs' general factual allegations, *see id.* at 17-18, ¶¶ 15-24, and, on their own (which they are), do not state a claim to relief that is plausible on its face, *see Twombly,* 550 U.S. at 570, or provide BANA with notice as required by Rule 8, *see* Fed. R. Civ. P. 8. As such, the court will not address them any further with respect to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

[9] California law does not generally provide a tort remedy for breach of the implied covenant of good faith and fair dealing in ordinary situations where the parties are a lender and a borrower. *See Dubin v. BAC Home Loans Servicing*, No. C-10-05065 EDL, 2011 WL 794995, at *7-*8 (N.D. Cal. Mar. 1, 2011) (collecting cases). Unless Plaintiffs can plead enough facts to permit the court to

C 12-00762
ORDER
14

"Under California law, a claim for breach of the [implied covenant of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract." *Wolf v. Wells Fargo Bank, N.A.*, No. C11–01337 WHA, 2011 WL 4831208 at *4 (N.D. Cal. Oct. 12, 2011) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 799 (2008)). To establish a breach of the covenant, then, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from that contract. *Id*.

As already described when discussing Plaintiffs' breach of contract claim, the TPP is an enforceable contract between Plaintiffs and BANA. The problem for Plaintiffs is that the TPP does not appear to require BANA to have already permanently modified Plaintiffs' loan, and Plaintiffs' factual allegations with respect to the BANA's offer of a permanent loan modification are unclear. Plaintiffs, then, fail to sufficiently allege how BANA's conduct frustrated their rights to benefit from the TPP.

Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is dismissed without prejudice.

D. Fraud

In their fifth cause of action, Plaintiffs allege a claim for common law fraud. Complaint, ECF No. 1 at 25-27, ¶¶ 70-85. "A cause of action for fraud [under California law] requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (quoting *Wilkins v. Nat'l Broadcasting Co., Inc.*, 71 Cal.App.4th 1066, 1082 (1999)); *see also* Cal. Civ. Code § 1572. Moreover, claims alleging fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)

---

draw a reasonable inference that their relationship with BANA had similar fiduciary characteristics to that of an insured and an insurer, a tort remedy is unavailable. *See Mitsui Mfr. Bank v. Superior Ct.*, 212 Cal. App. 3d 726, 730 (1989).

(if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

Plaintiffs do not sufficiently allege a claim for fraud. First, they do not sufficiently allege that BANA knowingly made a false misrepresentation and made it with the intent to deceive or to induce reliance by Plaintiffs. Plaintiffs allege that BANA "entered [into the] above mentioned [TPP] without ever intending to complete the transaction" and that Plaintiffs "were unaware of Defendants['] intentions to not perform in accordance with their promise." Complaint, ECF No. 1 at 25, ¶¶ 71, 72. They also allege that BANA "knew or should have known that Plaintiffs were not approved for a permanent loan modification" and that it "engaged in an illegal scheme, the purpose of which was to deny mortgage loan modification[s] in order to make excessive fees, commissions, and undisclosed profits by the sale of any instruments arising out the transaction." *Id*. at 25, ¶¶ 74, 75. These allegations are conclusory and unsupported. Plaintiffs do not allege specific facts to suggest that BANA never intended to provide Plaintiffs with an permanent loan modification offer, nor do they allege specific facts suggesting how BANA has "engaged in an illegal scheme" to collect "excessive fees, commissions, and undisclosed profits" in this instance. Simply put, their allegations of "scienter" are completely lacking.

Second, Plaintiffs do not sufficiently allege that they were harmed. They allege that while BANA "[was] leading Plaintiffs down a Primrose Path, reassuring them that they were in fact getting a loan modification, [it was] also actively trying to foreclose on Plaintiffs' property and charging high interest rates and late fees," *id*. at 26, ¶ 80, but as mentioned above, they do not allege that BANA or anyone else has recorded a notice of default or notice of trustee's sale, or similar document indicating that foreclosure proceedings have been initiated, and they also do not allege how or when BANA charged them "high interest rates and late fees" or what these rates and fees were, *see generally id*.

Accordingly, Plaintiffs' claim for fraud is dismissed without prejudice.

E.  Unfair Competition

1  In their fourth cause of action, Plaintiffs allege that BANA violated California's Unfair
2  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

3  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." "Since section
4  17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The
5  statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v.*
6  *Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech Communications, Inc. v.*
7  *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). To support a claim for a violation of the
8  UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l*
9  *Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).

10  Any individual who has "has suffered injury in fact and has lost money or property as a result of
11  the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a
12  plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an
13  'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between
14  the defendant's alleged UCL violation and the plaintiff's injury in fact. *See Rubio v. Capital One*
15  *Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

16  The UCL incorporates other laws and treats violations of those laws as unlawful business
17  practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225
18  F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the
19  basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994). In
20  addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the
21  practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003).

22  Plaintiffs allege that BANA violated the UCL's "unfair" and "fraudulent" prongs.[10] With

---

[10] Although most of Plaintiffs' allegations mention on the "unfair" and "fraudulent" prongs of the UCL, one paragraph also includes a reference to BANA's "unlawful, unfair, and fraudulent acts and practices." *Compare* Complaint, ECF No. 1 at 22-25, ¶¶ 55, 56, 57, 59, 60, 61, 63, 64, 65, 68 *with id*. at 24, ¶ 67. Even if Plaintiffs do mean to allege a violation of the "unlawful" prong, such a claim fails because, as explained *supra*, Plaintiffs fail to sufficiently allege any of their other claims. *Gumbs v. Litton Loan Servs.*, No. 2:09-cv-01159-GEB-GGH, 2010 WL 3341618, at *3-4 (N.D. Cal. Aug. 24, 2010) ("Plaintiffs' UCL claim is entirely premised upon Plaintiffs' Rosenthal Act and breach of the implied covenant of good faith and fair dealing claims, which fail to state a

C 12-00762
ORDER
17

respect to Plaintiffs' UCL claim based on fraudulent conduct, Plaintiffs must allege, with particularity, facts sufficient to establish that the public would likely be deceived by BANA's conduct. *See Finuliar v. BAC Home Loans Servicing, L.P.*, No. C–11–02629 JCS, 2011 WL 4405659, at *9-10 (N.D. Cal. Sep. 21, 2011) ("UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure."). Bare conclusions that the "the average consumer" would likely be deceived is insufficient to state a claim under the "fraud prong" of the UCL. *See Morgan v. AT&T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1255 (2009); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).

Here, Plaintiffs' allegations do not come close to meeting this standard. Plaintiffs' allegations of fraudulent conduct are conclusory or unsupported. Plaintiffs allege that "BANA entered [into the TPP] without intention of performing it," Complaint, ECF No. 1 at 23, ¶ 57(a), but, as explained above with respect to Plaintiffs' common law fraud claim, they do not allege specific facts to suggest that BANA never intended to provide Plaintiffs with an permanent loan modification offer, *see generally id*. Plaintiffs also allege, for example, that BANA "refused to accept" Plaintiffs' mortgage payment in order to foreclose on Plaintiffs' house," "assessed improper or excessive late fees," instituted improper or premature foreclosure proceedings," and "misapplied or failed to apply Plaintiffs' payments," *see*, *e.g.*, *id*. at 23, ¶ 57(b), (d), (f), (g), but, again, they do not allege that BANA or anyone else has recorded a notice of default or notice of trustee's sale, or similar document indicating that foreclosure proceedings have been initiated or allege any specific facts about how BANA did not accept Plaintiffs' payments or charged them fees, *see generally id*.

Plaintiffs also fail to sufficiently allege a claim under the "unfair" prong, under any of the potentially applicable standards. As the district court in *Phipps v. Wells Fargo* has explained:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256, 106 Cal. Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which

claim against U.S. Bank, Litton Loan, or Argent. Since these claims are no longer viable, by necessity, the UCL claim must also fail."); *Ingles v. Westwood One Broadcasting, Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (a defendant "cannot be liable under § 17200 for committing unlawful business practices without having violated another law.").

C 12-00762
ORDER
18

> have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal. Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal. Rptr.2d 389 (2002).
>
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr.3d 634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr.3d 697)).
>
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Davis*, 179 Cal. App. 4th 597–598, 101 Cal. Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr.3d 770 (2006)).

*Phipps v. Wells Fargo*, No. CV F 10–2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan.27, 2011). Here, Plaintiffs allege that BANA's failure to provide them with an offer to permanently modify their loan was "unfair" "because they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to mortgage borrowers" and "because the utility, if any, of their conduct alleged herein is vastly outweighed by the gravity of the harm these practices impose on borrowers such as Plaintiff[s]." Complaint, ECF No. 1 at 24, ¶¶ 64, 65. These allegations, which merely parrot the standard used in the second line of cases described above, are conclusory and unsupported by any specific facts.

Moreover, with respect to both Plaintiffs' "fraud" and "unfair" UCL claims, Plaintiffs fail to sufficiently allege that they "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" or (2) there is a "causal connection" between the BANA's alleged

1  UCL violation and their injury in fact. *See Rubio*, 613 F.3d at 1203-04 (citations omitted).  They
2  allege that they "have suffered injury in fact and [have] lost money due to paying higher monthly
3  payments than promised and unwarranted fees," "have lost a substantial amount of money in
4  foreclosure fees and penalties," and "suffer[ed] damages in the form of unfair and unwarranted late
5  fees and other improper fees and charges," but, as explained previously, the allegations are
6  conclusory and unsupported.  Plaintiffs never allege what these fees were, how much they were, or
7  why they were improper.

8  Accordingly, Plaintiffs' UCL claim is dismissed without prejudice.

9  F.  Declaratory Relief

10  Plaintiffs' sixth claim is for declaratory relief.  Complaint, ECF No. 1 at 27-28, ¶¶ 86-88.  The
11  Declaratory Judgment Act gives district courts discretion to exercise its jurisdiction over a claim for
12  declaratory relief.  *See* 28 U.S.C. § 2201.  A declaratory relief claim requires a present and actual
13  controversy between the parties.  *See Ngoc Nguyen,* 749 F. Supp. 2d at 1035; *Cal. Ins. Guar. Ass'n*
14  *v. Superior Court*, 231 Cal. App.3d 1617, 1623 (1991).  Because Plaintiffs have not adequately
15  alleged the prior claims, declaratory relief is not appropriate at this time.  Accordingly, Plaintiffs'
16  declaratory relief  claim is dismissed without prejudice.

## V.  CONCLUSION

Based on the foregoing, BANA's motion to dismiss is GRANTED and Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE.[11]  Plaintiffs may file a First Amended Complaint within 14 days from the date of this order.

This disposes of ECF No. 9.

**IT IS SO ORDERED.**

Dated: May 18, 2012

_____
LAUREL BEELER
United States Magistrate Judge

---

[11] Because the court dismisses Plaintiffs' complaint without prejudice, BANA's request that the court strike Plaintiffs' request for punitive damages and attorneys' fees that is found in their complaint.  *See* Motion, ECF No. 9 at 30-31.